Yes, Your Honor. Good morning. May I start? Please. Okay. Satsun Nalbani. I'm BFF Petitioner Arsen Vardanyan. Your Honors, this is an issue that comes up a lot these days, whether or not after the Velvet Revolution, there has been enough change in the country on an individualized basis. And the judges typically do take it, do get into detail on the individualized basis. However, in this case, the BIA and the immigration judge did not do a full analysis. And by that, I mean the issue of the last police attack or harm at the hands of the police, which took place on September 2018, was well after the Velvet Revolution. And the individuals who stayed in power, the police chief was actually, as the record shows, the police chief of Yerevan, the capital of Armenia, prior to the revolution. The prosecutor general, Artur Dovtyan, kept his power. And Mr. Vanetsian, the NSS chief, was head of the NSS, I believe, in Yerevan prior to the revolution. So essentially, there were some chairs moved around, but the people remained in power who were in power, the heads of the police, NSS, and the prosecutor. Moreover, the issue of whether or not Mr. Boghossian still had power in Armenia to cause persecution in the future or to use his powers to attack this individual, he was an oligarch. And there's a lot of oligarchs, unfortunately, in Armenia who kept their power. Only a few of them were investigated. And the issue of having power through your businesses and economic and political clout was never analyzed by the Board of Immigration Appeals or by the immigration judge in this case. I take your point about the necessity of looking at his individual circumstances, but I want to ask you about a larger question. Can the government satisfy its burden of establishing changed circumstances by only presenting the State Department's country report? I believe not, Your Honor, unless the State Department country report addresses individually, which is extremely rare, this person's specific circumstances and facts. So I believe not, Your Honor, generally. And just to follow up on that, I wrote a case in early 2019 called Singh v. Whitaker, which dealt with what the government needed to prove in order to take advantage of the relocation defense, if you will. To your knowledge, did the BIA or the IJ comply with the requirements of Singh v. Whitaker in this case? No, Your Honor, because I believe they did not address. First of all, if the government is the individual, the entity involved, it is presumed that it is unreasonable to relocate and they did not sufficiently implement the presumption. And moreover, Your Honor, in this case, they did not address all of the elements for relocation. Because the police and agencies are... That's the Singh v. Whitaker requirement, right? That's correct, are national and interconnected. Correct, Your Honor. So I have a follow up question to Judge Smith, which is, so to what extent do you feel that they relied on the report of country conditions? I mean, do you think the IJ just solely relied on that? Or do you think you took into consideration anything else? I'm sorry, Your Honor, I didn't catch it. Was that question was directed to me, correct? Yes. Basically, in this case, Your Honor, the IJ did do some and the board also admittedly did do some analysis, but not to the extent needed because there is a presumption that there is well-founded fear of future persecution. And they looked at whether or not Mr. Boghossian was a part of the government. And just because he is no longer in the government, they assumed he cannot cause harm to this individual any longer. They also looked at the fact that there's some investigation of corruption under the new government, which is hopeful, but unfortunately, even after the record was established, so I won't get into that, there are, in this case, we see where police, after the revolution, are still detaining and harming individuals and the same individuals stayed in power. They did not address any of that. Well, now, didn't the expert, I think his name was Kotler, I mean, wasn't that sort of a point of contention that when you presented Kotler, the IJ questioned him and asked him, but just felt that he couldn't bring to bear the information that he thought he was more of a historian than under the present circumstances and that the IJ felt that the circumstances had changed sufficiently based on the information he had? Again, those are two distinct, Your Honor, basically, in this case, Mr. Kotler established through, I believe, substantial evidence established that he has expertise in the region. He's a historian and that essentially he can address on the issue. So I believe it was incorrect to, the record establishes that it was incorrect to dismiss him as an expert. However, the IJ did say that she took into consideration Mr. Kotler's statements as well as the documentation submitted on the case. If you look at the documentation by itself, not necessarily Mr. Kotler's report as well, even the human rights report, the most recent one indicates that there is still police impunity and corruption in Armenia. So that's what I mean by it was not a full individualized analysis as required by this circuit. What are the standards before the IJ and I suppose indirectly the BIA for qualifying someone as an, in quotes, expert witness? Daubert doesn't apply, I assume. So if that is not the standard, what is? Basically, Your Honor, if the statement, I believe they could take, I apologize. I would have to look that up and I'll reserve that for rebuttal if I may, Your Honor. Do you want to save some of your time? You don't get any extra besides what you're funding. Yes, and I believe. Yes, Your Honor. Thank you very much. I believe it's about the judge. Don't have any preliminary questions before. OK, well, we'll save the balance of your time then. And we'll hear from the government, Mr. Cochran, I believe. Thank you. Good morning, Your Honors. May it please the court. Todd Cochran on behalf of the attorney general. The court has denied the petition for review because substantial evidence supports the determination. The DHS rebutted Mr. Vardanyan's presumption of a well-founded fear of future persecution. When it's individualized analysis of the improved country conditions in Armenia, the political party and the specific individual who previously harmed Mr. Vardanyan were removed from power in 2018. With respect, doesn't the record show that Mr. Vardanyan was in fact harmed by former officials or police operating under them after the Velvet Revolution? I believe that is correct, Your Honor. The Velvet Revolution occurred in April of 2018. The prime minister was removed. A new one was put into place as an acting. And then the elections occurred, I believe, in December of 2018. And then the party that Mr. Vardanyan supported at that point took over with 70% of the vote. They took over the parliament with a new prime minister and a new government at that point. And that's correct. But as I understand it, there is unrebutted testimony from Mr. Vardanyan that I may be wrong on the date, but it was in May or June after the Velvet Revolution that he was wrapped up by the police and at the direction of this former local official. Do you know I misunderstand? No, Your Honor, I don't believe that is incorrect. I will say that both the country report and Mr. Cutler's testimony told that the police were highly centralized and they were controlled by the government, mainly by the prime minister and the parliament. So I would say that the conditions have changed going forward, which is what the government has to show. They looked at the individual circumstances of Mr. Vardanyan. Yes, that may have occurred to him, but Mr. Pugosian was no longer a member of parliament. Mr. Vardanyan doesn't know if Mr. Pugosian is still in the country. He hasn't been following the conditions in the country since he left in 2018. And then the new government has taken control. And again, it was a party that he did support. So there was apparently some changeover between the parties at that point in time when the election actually occurred in December. The new prime minister, the new government took over power, and that is what the government believes is the changed conditions. We've had a number of cases in our court involving people from the Punjab in India, where suddenly the prime minister became a Sikh. And we still had all kinds of problems. I don't see much difference between that and this. He gets roughed up by the very same people that were roughing him up before. The Velvet Revolution was not very velvety from his perspective, was it, at that point? Not very velvety. I like that, Your Honor. I mean, yes, there was a situation. That is true that Mr. Vardanyan did experience some harm in 2018 after the Velvet Revolution. But again, the board's analysis said that things changed moving forward, which is what we want to look at here. The party that was in charge that caused these issues for him. I get that. But let's say that this is a month or two afterwards. What if it happened six months down the line? Is that enough? How long a period of time must pass before the, in quotes, Velvet Revolution surplants the previous reign of terror, if you will? I don't know what that sort of time period would be, Your Honor. Can I ask a question, Mr. Cochran? Of course. Am I clear in understanding that the revolution occurred in May, but are you saying that the newly elected party did not go into office until December? Well, the revolution occurred in the April 2018 timeframe where the prime minister was removed and there was an acting prime minister who was installed at that point in time. Then the election, where the acting prime minister's party actually was legitimately voted into power, occurred in the December 2018 timeframe. During that time, they launched investigations to prosecute corruption. The country reports state that Mr. Pugosian, who's the individual that harmed Mr. Vardanyan and Mr. Vardanyan's fears, the country report refers to him as a former member of parliament. I will note my opposing counsel proffers the argument that he was an oligarch and he still had power, whatever it may be. There was never any testimony or any evidence of Mr. Vardanyan showing that to be the case. All there is is what happened to him in the past. And then, you know, the country report talking about him being a former member of parliament and the current new post Velvet Revolution administration beginning these investigations to prosecute corruption. So that was the evidence that was before the agency. OK, but I guess my question is, after the revolution and then the prime minister was installed right around then, as Judge Smith said in May of 2018, Mr. Vardanyan was picked up by the police. Is that you agree with that, right? Yes, I believe that is a true statement, Your Honor. Yes. All right. And so what are you saying is that it wasn't until December of 2018 that the actual party was installed and began cleaning up this corruption? I mean, when are you saying this corruption started getting cleaned up? Well, I believe it started getting cleaned up post Velvet Revolution, but it wasn't like just I don't surely it wasn't just flipping a switch. You know, there were there was a lot of corruption. Some still remains in Armenia, as the country report mentions. They were working to take care of that. So it's unfortunate something may have happened to Mr. Vardanyan in that interim time period from when the revolution occurred and when the election actually happened. Nevertheless, you know, the new administration, the party he supported was working very hard to to change that and in fact has changed that. And so the fact that that has changed, that he the Republican Party is no longer in power. Mr. Pogosian is no longer in power. Mr. Vardanyan is part of the Heist Force is in power. That would rebut his fear of a well-founded fear in the future, if he were to return to Armenia today. Well, the government has the burden to show that the presumption in Mr. Vardanyan's favor is overcome. He was clearly, I think everyone agrees, was tortured in the past. So there's a presumption that will happen in the future. What is the best evidence that the government has individualized that the presumption has been overcome? The best evidence the government has on that does come from the country report regarding his previous persecutors, the Republican Party. One, Mr. Pogosian. Two, we're no longer in power and that the government, the party that Mr. Vardanyan supported, won 70.42 percent of the vote and 88 parliamentary seats. I don't know how many are actually in Armenian parliament, to give you a percentage of that. And the new government had launched these investigations to prosecute the prior corruption. That is the best evidence that the government has. So it's apparently not individualized. Is it your position, the government's position, that without an individualization as to the petitioner, that a country report alone is sufficient to rebut the presumption? Yes, it is. Mr. Vardanyan himself is not mentioned in the country report. No, it's not, Your Honor. No, he's not. So that is the evidence the government has. And again, Mr. Vardanyan also, I know it's the government's burden, but he didn't present any testimony that he knew Mr. Pogosian was looking for him. Or he knew he was still in this oligarch social circle power that he feared. He just proffers these ideas, but he doesn't say why that is, many evidences of why that's actually happening. But the government doesn't rebut that either, except with the country report. What's your best case for the proposition that a country report can overcome the individualized presumption that this gentleman, the petitioner, is entitled to here? Well, I think the best case for that, Your Honor, is going to be the Soe case, 538 F. 3rd, 1281, where it talks about country reports are the most appropriate, perhaps the best resource for information on political situations in foreign nations. But that case is not an individualized analysis of the petitioner in that case, is it? No, it's not. And the second case, Your Honor, we would rely upon is the Lal case. And there, it was the agency did not undertake individualized analysis, and the court remanded this. But in that situation, they were supposed to determine if the individual was part of the unlucky few that was most vulnerable to abuse. And they determined, the court determined that the individual in that case was a well-known organizer and leader. He was specifically targeted and added to a blacklist over the course of four years. And so that was an individual analysis. Here, the agency tried to do the same thing here. They tried to analyze Mr. Vardanyan's situation to the extent they could compare to the country reports. And again, they said, OK, Mr. Vardanyan supported the Yelk Alliance. The Yelk Alliance came into power in the Velvet Revolution, got 70 percent of the vote. OK, he feared the Republican Party. It was voted out during that election. OK, he feared Mr. Pugosian, who was a member of Parliament. He also was voted out. And they also looked to see, OK, people that were involved in this governmental corruption that he was fearing, the new government was— OK, I think we have your point, and you're out of time, but I want to ask my colleagues whether either has additional questions for the government. Judge Olin, do you have any? Nope. OK, Judge Cardone? I think you're on. OK, thank you very much. Your opposing counsel has some rebuttal time, so let's go back to him. Have a nice day. Thank you. You too. Thank you, Your Honors. All right, let's go with rebuttal. Yes, thank you, Your Honors. And I will discuss the expert, but just very quickly regarding what my opposing counsel stated. The individuals that are heads, again, I would just like to reiterate of the police department, the NSS, and the prosecutor's office remained in power from the prior Republican Party regime in Armenia. Regarding expert testimony, Your Honor, basically the BIA recently in a decision held, and essentially there is no uniform rigid process for qualifying an expert in immigration proceedings. And the immigration judge has broad discretion to conduct and control immigration proceedings and admit and consider relevant and probative evidence. This court, the Ninth Circuit, the closest I found on point is U.S. v. Hanke from 2000, stating that a police gang expert was found to be reliable and admitted as an expert because of his years of experience with gangs. Now, basically in this case, the judge stated that Mr. Kotler did have knowledge about the Soviet republics and had many years of expertise in that area. However, based on current events, she found that he is not an expert, but his years and years of experience with the Soviet republics and what is going on, as well as his reading of current events, I believe substantial evidence qualifies him as an expert and he should have been qualified. It wasn't the issue before the IJ in this case, what had happened after the Velvet Revolution, and if the expert, in quotes, didn't know about that, how could he be helpful to the IJ in making the appropriate determination? That's a good question, Your Honor. Basically, essentially the knowledge of how the former Soviet republics, especially Armenia, works, the politics in it, how long it takes for change to come about, and how changes have been brought about in the past, as well as his knowledge of the individuals who remained in power and what is going on today, based on third-party sources, of course, which experts can rely on. His prior experience informed his expert opinion on what today, whether or not there is a well-founded fear of future persecution, and all of that prior experience and publications and his background and expertise is very helpful to inform the court, which may not be as much of an expert on Armenia, as to whether or not there is really a substantial change of the well-founded fear of future persecution, whether it's been rebutted, the presumption, where there's no longer a 10% chance. If we believe your allegations and your claims on appeal, does the IJ even need the testimony of the expert in order to get a remand? No, Your Honor. Okay. Your time is up. May I ask my colleagues, does either have any additional questions for counsel? All right. We thank both counsel for your argument. It's been very helpful. The case of Verdanyan v. Barr is submitted. Thank you, Your Honor. Thank you, counsel. Thank you, Your Honor. Appreciate it. Thank you.
judges: M. Smith, Owens, Cardone